West, J.
In view of the magnitude of the private interests which this opinion may affect, not only in its immediate consequences, but in the future history and disposition of the public canals, we have given to the questions arising upon this record, which it is deemed necessary to pass upon, the most careful consideration.
The liability of the city to respond in damages to the plaintiffs, if any such liability exists, arises either independly of, or else under the statute of March 26th, 1864, authorizing the grant to it of the Manhattan Branch Canal; which propositions will be considered in their order.
I. Does such liability exist independently of the statute ?
(1.) It is admitted that Swan ci-eek is a stream navigable in fact, and that the aqueduct spanning its channel obstructed its navigation. Conceding that this obstruction might have been maintained by the sovereignty of the State, to promote her system of public works, the question as *394 sumes a widely different phase when the obstruction ceases to subserve any public purpose, and the work is abandoned. The obstruction of a navigable stream cannot be maintained to promote private interests.
The record shows that the aqueduct over Swan creek was judicially condemned as a nuisance, and impediment to the navigation thereof, and was abated under the order and process of a competent court, at the suit of Peter Lenk, after the grant of the Manhattan Canal to the city of Toledo was executed. It is alleged, however, that Mr. Lenk proceeded “ at-the request of the city,” and, hence, that it became liable, as a coadjutor of Lenk, for the injuries resulting from his act to the plaintiff’s mill. This claim would have much plausibility, if it appeared that Mr. Lenk proceeded without interest or legal right. But if the right existed in him to invoke judicial process against the aqueduct, his assertion of it was not wrongful, though at the request of the city. That Mr. Lenk had such legal right must, in the absence of any averment to the contrary, be presumed; for it was enforced by judgment and final process, and must, therefore, have been judicially found to exist. The fact was, that Mr. Lenk was a riparian proprietor immediately above said aqueduct, whose wharfage interests were injuriously affected by its obstructing navigation, and hence his right. And where a legal right exists in one, its judicial and orderly assertion, though at the request of another, creates no liability against either.
But was the common pleas justified in condemning and abating the aqueduct ? This depended on whether it had been abandoned by the State as a part of the public canals, and the protection of her sovereignty had been withdrawn therefrom.
In our opinion, these had both occurred. The grant by the State to the city of Toledo was an abandonment of the canal covered by it. The statute authorizing the grant denominated it “the vacation of said canal” which imports, and, when the authority was carried into grant, it. became an abandonment in fact. The continuance of the aqueduct *395 could thereafter subserve only private interests. But as it could not be rightly maintained to promote these alone, the action of the common pleas in condemning and abating it was proper. We are, therefore, clear in the opinion, that no liability arose or exists against the city consequent upon the abandonment of the Manhattan Canal, and the demolition of said aqueduct, unless it be imposed by the statute authorizing the grant.
II. Are the plaintiffs entitled to recover against the city, under the provisions of the statute, and the condition upon which the grant was made ? The statute enacts that the grant “ shall be subject to all outstanding rights and claims, if any, with which it may conflict,” and “that the city shall be liable for all damages which may accrue from the vacation of said canal.” What were the rights intended to be protected ; and, for injuries, was a liability cast upon the city ?
The liability of the city is restricted to those rights and subjects for an injury to which, resulting from the abandonment of the canal, a legal demand would accrue against the State ; or it extends to and includes other rights and subjects for the destruction of or injury to which a legal demand would not accrue against the State. These two classes of liabilities will next be considered.
Assuming, then, that the responsibility of the city was intended to be substituted for that of the State, and that a liability for such consequences only as would create a legal claim for damages against the latter was intended to be cast upon the former, the inquiry arises — had the plaintiffs any “ rights ” with which the abandonment of the canal con flicted ; or did a legal demand for damages accrue to them against the State, for any of its resulting consequences ?
The affirmative of these propositions is not seriously insisted on by the plaintiffs’ counsel ; nor could it be maintained, if it were. True, the period stipulated for the duration of their lease has not expired ; but the instrument or lease was a mere license to them to take, not an obligation on the part of the State to furnish. They were authorized *396 to withdraw and use the “surplus water” which might be incident to the operation of the canal, but the State was not bound to create such surplus. Their lease contained no covenants to repair, nor stipulation to maintain, nor obligation to operate the canal, nor any agreement to supply power to the plaintiffs’ mill. On the contrary, authority was expressly reserved to terminate the license and “resume at any time the right or privilege to the use of the water or any portion thereof, whenever it might be deemed necessary for tn . uuposes of navigation,” &c., without other convey.ance to the State than an obligation on her part to remit a suitable proportion of the reserved rent subsequently accruing ; or in case of a permanent resumption, totally destroying the value of the privilege, “ to absolve the plaintiffs from all further liability under the agreement.”
The provisions of the statute of March 23, 1840, under which the plaintiffs’ lease was granted, are as follows :
“ Sec. 20. Whenever in the opinion of the board of pub lie works there shall be surplus water in either of the canals, or in the feeders or at the dams erected for the purpose of supplying either of said canals with water, or for the purpose of improving the navigation of any river, and constructed at the expense of the State, over and above the quantity of water which may be required for the purpose ■of navigation, the said commissioner may order such surplus water, and any lands granted to, or purchased by the State for the purpose of using the same, or such part thereof as they may deem expedient, to be sold for hydraulic purposes, .subject to such conditions and reservations as they may consider necessary and proper, either in perpetuity, or for a limited number of years, for a certain annual rent or otherwise, as they may deem most beneficial for the interests of the State.
“ Sec. 21. The provisions of the foregoing section shall extend to and include the water passing around locks from one level to another, on either of the canals of this State.
“ Sec. 22. No hydraulic power, nor right to the use of any water, shall be sold, leased or conveyed, except such aa *397 shall accrue from the surplus water of the canal, feeders or dams, or from the water passing round any lock, after supplying the full quantity necessary for the purposes of navigation.
“ Sec. 23. Every lease, grant or conveyance of water power, shall contain a reservation and condition that the-State or its authorized agents may at any time resume the privilege or right to the use of water, or any portion thereof,, whenever it may be deemed necessary for the purpose of navigation, or whenever its use for hydraulic purposes shall-be found in any manner to interfere with and. injuriously affect the navigation of either of the canals, feeders or streams: from which the water shall be taken for such hydraulic purposes ; and whenever such privilege shall be resumed, in whole or in part, the sum paid therefor, or the rent reserved,, or such reasonable portion thereof as shall be determined, upon, agreeably to the conditions and stipulations of the-lease or deed of conveyance aforesaid, shall be refunded, or remitted to the purchaser or lessee, his heix-s or assigns.”
The following are the reservations coixtained in the plaintiffs’ lease: “ And the said party of the second part shall not be entitled to any deduction from the rent hereby made-payable, unless said party shall thereby be deprived of the use of the water for more thaxx one month in any oxxe year; and the party of the first paid reserves the right to resume at any time the use of the water hereby leased, whenever the same shall become necessary for the purpose of navigation, and to continue the use thereof so long as the same-shall be necessary for the purpose aforesaid. And if it shall become xiecessary for the party of the first part to resume-the use of so great a portion of the water hereby leased, or the whole thereof, for so great a portion of the time as to-defeat the object of this lease by destroying the value of the privilege (which fact shall be determined by three judicious disinterested freeholders, one to be chosen by the acting commissioner, or other authorized agent of the State, one by the party of the second part, and the third by the two-thus chosen,) then the party of the second part shall be from- *398 such time absolved from all further liabilities growing out of this agreement.”
By the terms of this lease, and of the statute authorizing it, the accruing of a liability, on the part of the State, to respond in damages to the plaintiffs for the destruction of their privilege, by resuming the grant, was expressly negatived. But the abandonment of the canal by the State had the same effect upon their privilege as would a resumption of the grant. Since, then, the consequences of resumption and of abandonment are identical, it is incredible that a liability should arise, by implication from the latter, which, by express negation, cannot from the former. If it were otherwise, the State would be compelled to maintain her canals, at any sacrifice, for the exclusive benefit of the lessees of surplus water. This cannot' be. The creation of water power did not enter into the purpose of their construction. It was adventitious, incidental, and, therefore, necessarily precarious ; and those obtaining grants thereof must be supposed to have taken them, subject to the fluctuations of tides, and the changes of time. Hence, it seems to us to have been the obvious intention of the law, and of the lease under it, which could not exceed the authority of the law, that the privilege granted to the plaintiffs should continue for such period, not exceeding that specified, as the State might see proper to maintain and operate the canal, unless sooner terminated for some of the reasons enumerated in the statute. In this view we are sustained by the analogous case of Brett et al v. The Trustees of the Wabash & Erie Canal, 25 Ind. R. 409, in which.the consequences of abandonment, under a similar lease, were fully considered.
The result, then, is, that if, as above assumed, the liability of the city was, by the statute, restricted to and substituted for that of the State, it follows, that as no legal demand accrued to the plaintiffs against the State, they cannot recover against the city.
But it is insisted for the plaintiffs that, inasmuch as the grant to the city of Toledo, was made “ subject to all outstanding rights and claims, if any, with which it might *399 conflict” and that “the city should be liable for all damages which might accrue from the vacation of said canal,” its liability was, by the statute, expressly enlarged and extended to cover consequences for which no legal demand could arise against the State, and that plaintiffs’ claim is of the class thus protected.
(1.) It must be supposed that the legislature, in speaking of “outstanding rights and claims ” contemplated “ rights and claims” of possible existence against the State, with which an abandonment of the canal might conflict, and for which a legal demand might be preferred against the State. But the alleged right or claim of plaintiffs, under their lease, was, as we have seen, revocable at the pleasure of the State, either by resuming the grant, or by abandoning the canal, of which their 'privilege was but an incident. Hence, as whatever rights or claims plaintiffs had under their lease might be lawfully terminated by an abandonment of the canal, such abandonment could not, in any legal sense, conflict with them. It was only rights and claims that might not be lawfully terminated by the State, with which a conflict was possible. “If any” such “rights or claims” were “ outstanding ” they were protected. "We think the plaintiffs’ lease did not vest in them such claim or right. They had a mere license, which the abandonment extinguished.
(2.) "When the statute was passed authorizing the abandonment of the canal to the city of Toledo, the lessees of the public works were in actual possession of it, under the act of May 8, 1861, and the lease executed in pursuance thereof, and by which they were empowered to hold, maintain and operate the same, and appropriate its revenues. To this extent, the body of the canal had become, for the time, the private property of the lessees, of which they could not be divested by the State, without impairing the obligations of their contract. This lease was an “ outstanding right and claim ” which could not be lawfully defeated by an act of abandonment, and with which it would necessarily conflict. To have terminated their possession arbitrarily, would have authorized the lessees to rescind the entire contract of lease, *400 or prefer against the State a legal demand for “ damages accruing from the vacation of said canal.”
The legislature having the “rights and claims” of these lessees in view, imposed upon the city of Toledo the alternative of “ depositing with the governor” a written relinguishment by them of “ any right they might have in that part of the canal,” so vacated; or a bond * * * indemnifying the State against all liabilities and damages which might result from said vacation.”
The release and the bond thus made the alternative conditions of the grant were plainly regarded as equivalents. Either might be substituted for the other, the protection to-be afforded by each being the same, and against the same-liability.
The only “ damages ” against which the “ written release ” required could furnish a protection were those arising from an interference with the lease of the public works. But as the substitution of a bond instead of the release was authorized, it must be supposed that the “ damages ” covered by it were restricted to those arising from the same source ; for it is unreasonable that, if the bond was intended to cover-damages other and, it might be, infinitely greater than those accruing to these lessees, the legislature would have authorized their “ written release” to be substituted in its stead. Hence the term “ damages,” in this clause of the statute, must be restricted, in its sense and application, to consequences flowing from an interference with the lease of the-public works. For these, the liability of the city is, by this clause of the statute, plainly substituted for that of the State,, but is not extended to any other class of damages.
Is it extended by any other clause ? Iu another it is declared in general terms that “ the city shall be liable for all damages which may accrue from the vacation of said canal.”" It is a rule of construction that where the sense of a term in any clause of a statute is ascertained and definite, its sense in other clauses will be presumed to have been intended the-same, unless enlarged or restricted by the context, or necessarily varied to effectuate the obvious intention of the stafc *401 ute. Applying this rule, it results that the term “ damages ” having an ascertained and definite sense and application in the indemnity clause of this act, will be presumed to have been used in the same restricted sense in the other clause, neither the context nor the intention of the act requiring it to be enlarged.
This view is strengthened by the unreasonableness of supposing that the legislature intended to make the city liable •for two classes of damages, namely, those arising under the lease of the public works, and those arising otherwise, and yet exact indemnity against the former only, and not against the latter, and it might be infinitely lai'ger class. It is further strengthened by the studied omission of the statute to mention the plaintiffs’ lease as a subject matter to be protected, although it could as readily have been done as was the lease of the public works. Finally, it is confirmed by the improbability of the legislature intending, by the employment of general language, to make the city liable for consequential damages for which no legal demand could accrue against the State, and hence no motive could exist for casting it upon the city.
The conclusion reached is, that the statute cannot be enlarged, by construction, to relieve the plaintiffs, unless the clause “ all damages which may accrue from the vacation of said canal,” be held synonymous with all losses or diminution of value occasioned thereby. If this door were opened, the depreciations of riparian and adjacent values of no kind, speculative or substantive, could be excluded. No reason exists for extending protection to mills, which might not be urged in favor of commission and warehouses, and all other adjacent investments. A burden of infinite magnitude might thus be fastened upon the city, which it is impossible to suppose was intended as the consequence of abandoning a useless, valueless, public work.
The judgment of the common pleas is affirmed.
Welch, C. J., and White, Dat and McIlvaine, JJ., concurred.